<u>**NOT FOR PUBLICATION**</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

CHRISTOPHER RIGHETTI,   :
         :  Civil Action No. 07-1608 (JAG)
    Petitioner, :
         :
    v.    :  **OPINION**
         :
LYDELL SHERRER,     :
         :
    Respondent. :

**APPEARANCES:**

Petitioner <u>pro</u> <u>se</u>
Christopher Righetti
Northern State Prison
168 Frontage Road
P.O. Box 2300
Newark, NJ 07114

Counsel for Respondent
Christopher C. Josephson
Deputy Attorney General
R.J. Hughes Justice Complex
25 Market Street
P.O. box 112
Trenton, NJ 08625-0112

**GREENAWAY, JR.**, District Judge

   Petitioner Christopher Righetti, a prisoner currently confined at Northern State Prison in Newark, New Jersey, has submitted a petition seeking the issuance of a writ of habeas corpus, pursuant to 28 U.S.C. § 2254.  The respondent is Warden Lydell Sherrer.  For the reasons stated herein, the Petition will be denied.

I. <u>BACKGROUND</u>

In 1977, a jury convicted Petitioner of first degree murder, N.J. STAT. ANN. § 2A:113-1 and -2 (repealed 1979), and rape, N.J. STAT. ANN. § 2A:138-1 (repealed 1979), of a twenty-year-old woman. An examiner for the Adult Diagnostic and Treatment Center determined that the conviction did not fall within the purview of the then New Jersey Sex Offender Act because there was no evidence that the rape and murder were part of a repetitive or compulsive pattern of behavior. The trial judge merged the convictions and imposed a life term.

The Adult Panel of the New Jersey State Parole Board denied Petitioner parole in 1991 and 2000. In 1991, a three-member panel set a 120-month Future Eligibility Term ("FET"). In 2000, a three-member panel set Petitioner's FET at 144 months.

In January 2004, a two-member panel again considered Petitioner for parole. Petitioner, for the first time, acknowledged his guilt for the rape conviction, but maintained that the stabbing resulted from a drug-induced hallucination. The two-member panel again denied parole. The panel found that "a substantial likelihood exists that [Petitioner] would commit a new crime if released on parole at this time." Specifically, the panel explained that Petitioner "has only begun the process of accepting responsibility ... [and] still fails to remember important aspects of his behavior." The panel further noted that

Petitioner "still has very little understanding of the larger forces that drove him as a young man," and that he "was still telling lies about the victim 18 years after the event [and] does not now seem to know why."

The two-member panel referred the matter to a three-member panel to establish an FET. The three-member panel established a 132-month FET. On August 4, 2004, the Parole Board affirmed the decisions of the two-member and three-member panels.

Petitioner then sought review in the Superior Court of New Jersey, Appellate Division,[1] which found that the Parole Board had considered appropriately all relevant evidence, including a confidential appendix, and had applied the correct standard of review. On February 16, 2006, the Supreme Court of New Jersey denied certification.

This Petition, dated March 27, 2007, followed. Petitioner asserts five grounds for relief: (1) the Parole Board violated the Ex Post Facto clause by applying the standards of the 1979 Parole Act, rather than the 1948 Parole Act in effect at the time of Petitioner's conviction; (2) the Parole Board violated Petitioner's due process rights by imposing an extended FET; (3) the decision of the Parole Board is not supported by the evidence; (4) the decision to impose a 12-year FET in 2000, after

---

[1] The record available to this Court does not reveal on what date Petitioner filed his appeal in the Appellate Division.

3

imposing a 10-year FET in 1991, is arbitrary and a denial of Petitioner's due process rights; (5) the absence of a schedule for FETs outside of the regulatory and statutory guidelines renders such FETs, including Petitioner's, a violation of Petitioner's due process rights.

Respondent has answered that the Petition should be dismissed as untimely or denied because the decisions of the New Jersey courts were neither contrary to, nor involved an unreasonable application of, clearly established federal law nor based on an unreasonable determination of the facts in light of the evidence presented. Petitioner has replied. This matter is now ready for decision.

## II.  <u>28 U.S.C. § 2254</u>

As amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254 now provides, in pertinent part:

> (a) The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.
>
> ...
>
> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

4

(1) resulted in a decision that was contrary to, or
involved an unreasonable application of, clearly
established Federal law, as determined by the Supreme
Court of the United States; or

(2) resulted in a decision that was based on an
unreasonable determination of the facts in light of the
evidence presented in the State court proceeding.

A pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers. <u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976); <u>Haines v. Kerner</u>, 404 U.S. 519, 520 (1972). A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance. <u>See</u> <u>Royce v. Hahn</u>, 151 F.3d 116, 118 (3d Cir. 1998); <u>Lewis v. Attorney General</u>, 878 F.2d 714, 721-22 (3d Cir. 1989).

III.   <u>ANALYSIS</u>

A.   <u>Timeliness</u>

Respondent asserts that this Petition, dated March 27, 2007, is untimely.[2]  This Court disagrees.

The limitation period for a § 2254 habeas petition is set forth in 28 U.S.C. § 2244(d), which provides in pertinent part:

(1) A 1-year period of limitations shall apply to an
application for a writ of habeas corpus by a person in
custody pursuant to the judgment of a State court.  The
limitation period shall run from the latest of–

_____

[2] "[A] pro se prisoner's habeas petition is deemed filed at the moment he delivers it to prison officials for mailing to the district court." <u>Burns v. Morton</u>, 134 F.3d 109, 113 (3d Cir. 1998) (citing <u>Houston v. Lack</u>, 487 U.S. 266 (1988)).  This Petition is dated March 27, 2007, and is postmarked March 28, 2007.  Accordingly, this Court deems the Petition filed on March 27, 2007.

5

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

...

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

A challenge to the denial of parole is not a challenge to the state court "judgment," pursuant to which a state prisoner is confined; as such, the limitations period contained in § 2244(d)(1)(D) controls.  The date on which the factual predicate of a claim challenging a denial of parole could have been discovered is the date on which the denial of parole becomes final, assuming the prisoner received timely notice.  See, e.g., McAleese v. Brennan, 483 F.3d 206 (3d Cir. 2007) (Pennsylvania parole system, no judicial remedies).  See also Dulworth v. Evans, 442 F.3d 1265 (10th Cir. 2006) (factual predicate of claim challenging administrative decision becomes discoverable on date that denial of administrative appeal becomes final); Shelby v. Bartlett, 391 F.3d 1061 (9th Cir. 2004); Wade v. Robinson, 327 F.3d 328 (4th Cir.), cert. denied, 540 U.S. 912 (2003).

Here, on August 4, 2004, the full Parole Board affirmed the denial of parole.  Petitioner does not allege that he failed to receive timely notice.  Accordingly, the limitations period for

challenges to the 2004 decision began to run on August 4, 2004.[3]
Absent tolling, Petitioner was required to file a federal habeas
petition challenging the Parole Board decision no later than
August 4, 2005.

The limitations statute provides for tolling.  Specifically,
pursuant to 28 U.S.C. § 2244(d)(2):

> The time during which a properly filed application for
> State post-conviction or other collateral review with
> respect to the pertinent judgment or claim is pending
> shall not be counted toward any period of limitation
> under this section.

An application for state post-conviction relief or collateral
review is considered "pending" within the meaning of
§ 2244(d)(2), and the limitations period is statutorily tolled
from the time it is "properly filed," during the period between a
lower state court's decision and the filing of a notice of appeal
to a higher court, Carey v. Saffold, 536 U.S. 214 (2002), and
through the time in which an appeal could be filed, even if the
appeal is never filed, Swartz v. Meyers, 204 F.3d at 420-24.
However, "the time during which a state prisoner may file a
petition for writ of certiorari in the Supreme Court of the
United States from the denial of his state post-conviction

---

[3] Petitioner refers alternatively to the 1991 and 2000
parole denials, in addition to the 2004 denial.  It is not clear
whether Petitioner intends in this Petition to challenge the 1991
and 2000 parole denials.  In any event, any challenges to the
1991 and 2000 parole denials are unquestionably untimely and will
be dismissed.

petition does not toll the one year statute of limitations under 28 U.S.C. § 2244(d)(2)." Stokes v. District Attorney of the County of Philadelphia, 247 F.3d 539, 542 (3d Cir.), cert. denied, 534 U.S. 959 (2001).

Thus, the limitations period was statutorily tolled during the time when Petitioner's properly-filed judicial appeals of the Parole Board's decision were pending. See, e.g., Bonner v. Hill, Civil Action No. 04-1736, 2008 WL 483405 (D. Ore. Feb. 20, 2008).

The record provided by Respondent to this Court does not include Petitioner's notice of appeal to the Appellate Division. Accordingly, it is not possible to determine how much, if any, of the limitations period expired between the time the Parole Board administratively affirmed the denial of parole on August 4, 2004, and the date Petitioner filed his notice of judicial appeal in the Appellate Division, when the limitations period became tolled. The Supreme Court of New Jersey denied certification on February 16, 2006. Accordingly, absent further tolling, Petitioner was required to file this habeas petition no later than February 16, 2007.

The limitations period of § 2244(d) also is subject to equitable tolling. Fahy v. Horn, 240 F.3d 239, 244 (3d Cir.), cert. denied, 534 U.S. 944 (2001); Jones v. Morton, 195 F.3d 153, 159 (3d Cir. 1999); Miller v. New Jersey State Dept. of

8

Corrections, 145 F.3d 616, 618 (3d Cir. 1998).  Equitable tolling

applies

> only when the principles of equity would make the rigid
> application of a limitation period unfair.  Generally,
> this will occur when the petitioner has in some
> extraordinary way been prevented from asserting his or
> her rights.  The petitioner must show that he or she
> exercised reasonable diligence in investigating and
> bringing the claims.  Mere excusable neglect is not
> sufficient.

Miller, 145 F.3d at 618-19 (citations and punctuation marks

omitted).

Petitioner argues that the limitations period should be

equitably tolled.  When he submitted this undated Petition to the

Court, he included a statement, captioned "Filing Fee" and dated

March 27, 2007, in which he stated,

> I, Christopher Righetti, being of legal age, hereby
> certifies [sic] that the filing fee will be sent from :
> Mary Righetti, because for the past three-(3) months I
> have tried to send it through the Northern State
> Business Office to no avail.  A paralegal here told me
> to send the motion in first, and explain why the filing
> fee is coming from a separate source.

Again, in his Reply, Petitioner stated,

> As to my Petition being untimely, I attempted to file
> timely, however the staff here at Northern refused to
> forward my Petition with the fee through the mailroom.
> After several weeks of attempting this, I was forced to
> have my mother file the petition on my behalf, with a
> check from her to pay the fee.

(Reply, Docket Entry No. 11, at 2.)

Rule 3 of the Rules Governing Section 2254 Cases in the

United States District Courts requires that a § 2254 habeas

petition be filed with the Clerk and that it be accompanied by either the applicable filing fee or a motion for leave to proceed in forma pauperis with a certificate from a correctional officer showing the amount of money the petitioner has in any account at the institution.  It is apparent that Petitioner attempted to file this Petition in a timely manner, accompanied by the required filing fee.  Petitioner's efforts at filing in a timely manner were thwarted by prison staff.  This Court shall accept the Petition as being filed timely and will address Petitioner's claims on the merits.

B.   Petitioner's Claims

With respect to any claim adjudicated on the merits in state court proceedings, the writ shall not issue unless the adjudication of the claim

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court decision is "contrary to" Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or "if the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] Court and nevertheless

10

arrives at a result different from [the Court's] precedent."
Williams v. Taylor, 529 U.S. 362, 405-06 (2000) (O'Connor, J.,
for the Court, Part II).

A state court decision "involve[s] an unreasonable
application" of federal law "if the state court identifies the
correct governing legal rule from [the Supreme] Court's cases but
unreasonably applies it to the facts of the particular state
prisoner's case," and may involve an "unreasonable application"
of federal law "if the state court either unreasonably extends a
legal principle from [the Supreme Court's] precedent to a new
context where it should not apply or unreasonably refuses to
extend that principle to a new context where it should apply,"
(although the Supreme Court expressly declined to decide the
latter). Id. at 407-09.  To be an "unreasonable application" of
clearly established federal law, the state court's application
must be objectively unreasonable.  Id. at 409.  In determining
whether the state court's application of Supreme Court precedent
was objectively unreasonable, a habeas court may consider the
decisions of inferior federal courts.  Matteo v. Superintendent,
171 F.3d 877, 890 (3d Cir. 1999).

Even a summary adjudication by the state court on the merits
of a claim is entitled to § 2254(d) deference.  Chadwick v.
Janecka, 302 F.3d 107, 116 (3d Cir. 2002) (citing Weeks v.
Angelone, 528 U.S. 225, 237 (2000)).  With respect to claims

11

presented to, but unadjudicated by, the state courts, however, a federal court may exercise pre-AEDPA independent judgment.  See Hameen v. State of Delaware, 212 F.3d 226, 248 (3d Cir. 2000), cert. denied, 532 U.S. 924 (2001); Purnell v. Hendricks, 2000 WL 1523144, *6 n.4 (D.N.J. 2000).  See also Schoenberger v. Russell, 290 F.3d 831, 842 (6th Cir. 2002) (Moore, J., concurring) (and cases discussed therein).

The deference required by § 2254(d) applies without regard to whether the state court cites to Supreme Court or other federal case law, "as long as the reasoning of the state court does not contradict relevant Supreme Court precedent."  Priester v. Vaughn, 382 F.3d 394, 398 (3d Cir. 2004) (citing Early v. Packer, 537 U.S. 3 (2002); Woodford v. Visciotti, 537 U.S. 19 (2002)).

1.   Ex Post Facto Claims

Petitioner argues that the Parole Board violated the Ex Post Facto clause by applying to him the release standards of the Parole Act of 1979, rather than the Parole Act of 1948 in effect at the time of petitioner's conviction.  In addition, Petitioner objects to the Parole Board's use of his entire file, as permitted by a 1997 amendment to the Parole Act of 1979, to determine his eligibility for parole.

Article I, Sections 9 and 10, of the Constitution of the United States, prohibit the federal and state governments from

12

passing any "ex post facto Law."  In <u>Collins v. Youngblood</u>, 497 U.S. 37, 41 (1990), the Supreme Court reaffirmed that the Ex Post Facto Clause incorporates "a term of art with an established meaning at the time of the framing of the Constitution." Specifically, the Clause is aimed at laws that "retroactively alter the definition of crimes or increase the punishment for criminal acts."  <u>Id.</u> at 43 (citations omitted).  The Supreme Court has noted that "[r]etroactive changes in laws governing parole of prisoners, in some instances, may be violative of this precept."  <u>Garner v. Jones</u>, 529 U.S. 244, 250 (2000) (citations omitted).  The Supreme Court has emphasized that "the question of what legislative adjustments 'will be held to be of sufficient moment to transgress the constitutional prohibition' <u>must</u> be a matter of 'degree.'  In evaluating the constitutionality of [an amendment to parole law], we must determine whether it produces a sufficient risk of increasing the measure of punishment attached to the covered crimes."  <u>California Dept. of Corrections v. Morales</u>, 514 U.S. 499, 509 (1995) (citations omitted) (emphasis in original).

Prior to the Supreme Court decisions in <u>Morales</u> and <u>Garner</u>, the Court of Appeals for the Third Circuit considered the very question presented here: whether it worked a violation of the Ex Post Facto Clause to apply the 1979 Parole Act to a prisoner who committed his crime when the 1948 Parole Act was in effect.  <u>See</u>

13

Royster v. Fauver, 775 F.2d 527 (3d Cir. 1985) (cited with
approval in Mason v. Pinchak, 75 F. App'x 867 (3d Cir. 2003),
cert. denied sub nom Auge v. Hendricks, 543 U.S. 929 (2004)).

In Royster, the Court of Appeals noted that the Parole Act
of 1948 required the Parole Board to consider two factors in
determining whether a prisoner was eligible for parole,
permitting parole only if the Parole Board determined that:

> [1] there is a reasonable probability that,
> if such prisoner is released, he will assume
> his proper and rightful place in society
> without violation of the law, and [2] ... his
> release is not incompatible with the welfare
> of society.
>
> The first factor is clear: a prisoner could be released
> only if the Board believed that the prisoner would not
> commit a crime again. ... [T]he second factor required
> the Board to find that the "punitive aspects" of a
> prisoner's sentence had been accomplished; that is,
> that the defendant had served a period commensurate
> with, and demonstrated contrition appropriate to, the
> gravity of his crime.

775 F.2d at 529 (quoting N.J. STAT. ANN. § 30:4-123.14
(repealed)).

In 1979, the State of New Jersey adopted a new Code of
Criminal Justice and the Parole Act of 1979.  The "significant
difference" between the old and new systems was that the 1979
system "shifted from the Parole Board to the sentencing judge the
responsibility of seeing to it that the 'punitive aspects' of a
convicted person's sentence would be satisfied. ... The New Code
did this by imposing mandatory minimum sentences for many crimes,

14

thus making parole eligibility a function of the sentence received." 775 F.2d at 529 (citing N.J. STAT. ANN. § 2C:43-6). Accordingly, the 1979 Parole Act required the Board to focus exclusively on whether the prisoner would likely commit crimes if granted a parole.

> An adult inmate shall be released on parole at the time of parole eligibility, unless [it is demonstrated] ... by a preponderance of the evidence that there is a substantial likelihood that the inmate will commit a crime under the Laws of this State if released.

N.J. STAT. ANN. § 30:4-123.53(a) (Parole Act of 1979).

The Court of Appeals found no ex post facto violation from application of the 1979 Parole Act to a prisoner convicted when the 1948 Act was in effect. Comparing the two statutes to determine whether the standards of the newer act were "more rigorous or burdensome" than were the standards of the older one, the Court of Appeals found the standards in the two acts to be "precisely the same." 775 F.2d at 530. Nothing in the Supreme Court's more recent <u>Garner</u> and <u>Morales</u> decisions casts any doubt on the continued vitality of the Third Circuit's <u>Royster</u> decision. Thus, application of the Parole Act of 1979 to Petitioner did not violate the Ex Post Facto Clause.

Petitioner also complains of the Parole Board's consideration of his entire file in determining his fitness for parole. Pertinent factors that the Parole Board may consider in determining whether an inmate should be released on parole

15

include, among others, facts and circumstances of the offense, aggravating and mitigating factors surrounding the offense, participation in institutional programs, statements by institutional staff (with supporting documentation) that the inmate is likely to commit a crime if released on parole, and statements by the inmate reflecting the likelihood that he or she will commit another crime. "The report ... shall include a complete report on the inmate's social, physical and mental condition ... ." N.J. Admin. Code § 10A:71-3.11(b).

Correctional staff are required to file a pre-parole report with the Parole Board prior to the parole eligibility date of each adult inmate. N.J. Stat. Ann. § 30:4-123.54(b)(1). The Parole Act of 1979 further provided:

> An inmate shall be released on parole on the new parole eligibility date unless <u>new</u> information filed pursuant to [N.J. Stat. Ann. § 30:4-123.54] indicates by a preponderance of the evidence that there is a substantial likelihood that the inmate will commit a crime under the laws of this State if released on parole at such time.

N.J. Stat. Ann. § 30:4-123.56(c) (emphasis added) (amended 1997).

Under the Parole Act of 1997, enacted during Petitioner's incarceration, Section 30:4-123.56(c) was amended to delete the word "new," thus permitting the State Parole Board to consider all information in the inmate's file, not just "new" information developed since the most recent prior parole hearing.

The New Jersey courts have considered whether the 1997 amendment to Section 30:4-123.54(c) violates the Ex Post Facto Clause, when applied to an offender, such as Petitioner, sentenced under the Parole Act of 1948.  See Trantino v. New Jersey State Parole Board, 752 A.2d 761 (N.J. Super. App. Div. 2000), modified in part on other grounds, aff'd in part, remanded, 764 A.2d 940 (N.J. 2001).  The Appellate Division specifically held that the 1997 amendment:

> did not violate the Ex Post Facto Clause since this change in the law [was] a procedural modification that [did] not constitute a substantive change in the parole release criteria. ...  We conclude that the 1997 statutory amendment does not modify the parole eligibility standard ...; rather, it simply allows the Board to consider all available evidence relevant to the application of that standard.  We find no ex post facto violation.

752 A.2d at 781-82 (citing, inter alia, Morales, 514 U.S. 499, and Beazell v. Ohio, 269 U.S. 167 (1925)).

Instead, this provision merely provides that the Board's discretion shall be exercised through the utilization of more complete information.  Thus, there does not inhere in this provision any likelihood that the Board's discretion will be exercised in a manner detrimental to this Petitioner's, or any inmate's, interests in release on parole.  This Court concludes that this amended provision does not violate the Ex Post Facto Clause.

17

The Superior Court of New Jersey, Appellate Division rejected Petitioner's claims, holding that the Parole Board had applied the correct standard and had properly considered Petitioner's entire record.  The Appellate Division specifically applied the "critical inquiry" "whether the statute realistically produces a sufficient risk of increasing the measure of punishment [so] as to offend the constitutional prohibition." Righetti v. New Jersey State Parole Board (N.J. Super. App. Div. July 26, 2005) at *11 (citing Beasell v. Ohio, 269 U.S. 167, 171 (1925)) (Resp. Ex. A.).  The Appellate Division again emphasized that the 1997 amendment to § 30:4-123.56(c) "merely adjusted a purely procedural mechanism affording the board a more complete view of the inmate."

The decision of the Appellate Division is neither contrary to, nor an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.  Nothing in the standards applied to Petitioner, or in the use of his complete record, inherently produced any risk of increasing his punishment.  Petitioner is not entitled to relief on these claims.  See Jenkins v. D'Amico, 2007 WL 1797649 (D.N.J. 2007); Oliver v. New Jersey State Parole Board, 2007 WL 923516 (D.N.J. 2007).  Cf. Brooker v. Warden, 1999 WL 813893 (D.N.H. 1999) (addition of sexual offender programs to the considerations used for parole does not violate the Ex Post Facto Clause).

18

2.   The Due Process Claim

Petitioner argues that the Parole Board violated his due process rights by imposing, in 2004, an extended Future Eligibility Term ("FET") of 132 months.[4]  Petitioner also argues that the provision of the Administrative Code permitting extended FETs is unconstitutionally vague and permits arbitrary decisions. The Appellate Division summarily rejected this claim.

As a preliminary matter, it must be remembered that there is no federal constitutional right to parole; states, however, may create a parole entitlement protected by the Due Process Clause. See Greenholtz v. Inmates of Nebraska Penal & Correctional Complex, 442 U.S. 1, 7 (1979).  See also Board of Pardons v. Allen, 482 U.S. 369 (1987); Prevard v. Fauver, 47 F. Supp. 2d 539, 545 (D.N.J.), aff'd, 202 F.3d 254 (3d Cir. 1999).

Section 10A:71-3.21(a) of the New Jersey Administrative Code sets forth a schedule of presumptive Future Eligibility Terms for certain offenses.  Pursuant to Section 10A:71-3.21(d), however, a three-member panel of the Parole Board may establish an extended FET if the FET set forth in the schedule would be "clearly inappropriate due to the inmate's lack of satisfactory progress in reducing the likelihood of future criminal behavior."

---

[4] In addition, Petitioner argues that the decision to impose a 12-year FET in 2000, after imposing a 10-year FET in 1991, is arbitrary and a denial of Petitioner's due process rights.  Any claim challenging the 2000 parole decision is untimely and will be dismissed.

The Parole Board is not given unfettered discretion to impose an extended FET.  First, as explained above, the Parole Board can impose an FET outside of the schedule only where the scheduled FET is "clearly inappropriate due to the inmate's lack of satisfactory progress in reducing the likelihood of future criminal behavior."

The regulation requires that the decision to impose an extended FET must take into consideration those factors enumerated in N.J. ADMIN. CODE § 10A:71-3.11, including more than 20 specific factors related to the offense and the offender.  The regulation also establishes certain procedural requirements.  The prisoner must be given advance notice that a three-member panel is considering imposing an extended FET; the inmate then is given 30 days to submit a written statement.  Upon reaching a decision, the panel must provide the prisoner a written statement of the reasons for imposing an extended FET.

"[F]ederal courts are not authorized by the due process clause to second-guess parole boards and the requirements of substantive due process are met if there is some basis for the challenged decision."  Coady v. Vaughn, 251 F.3d 480, 487 (3d Cir. 2001).  The relevant level of arbitrariness necessary to find a substantive due process violation is action that is "conscience shocking" or "deliberately indifferent."  See Hunterson v. DiSabato, 308 F.3d 236, 246-47 (3d Cir. 2002).

Both federal and state courts have held that the New Jersey parole statute contains language creating an expectation of parole eligibility entitled to some measure of procedural due process protections.  See Williams v. New Jersey State Parole Board, 1992 WL 32329, *2 (D.N.J. Feb. 4, 1992), aff'd, 975 F.2d 1553 (3d Cir. 1992); New Jersey State Parole Board v. Byrne, 93 N.J. 192, 203 (1983).  Judge Lifland of this Court has held that these cases remain good law even after taking into account the rule announced by the Supreme Court in Sandin v. Conner, 515 U.S. 472, 484 (1995) (citations omitted), that liberty interests created by state law "will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  See Watson v. DiSabato, 933 F. Supp. 390, 392-93 (D.N.J. 1996).

The question remains what process is due.  The Supreme Court of New Jersey has stated that

> Only a few basic procedures are required to deal with the risks of erroneous or arbitrary determinations in this context.  We conclude that the process required is notice of the pendency of the parole disposition, a statement by the objecting judge or prosecutor of the reasons why the punitive aspects of the sentence have not been fulfilled, and the opportunity for the prisoner to respond in writing to that statement of reasons.  No hearing, confrontation, or counsel issues are implicated here.

Byrne, 93 N.J. at 211.  See also Watson, 933 F.Supp. at 393
(prisoner has liberty interest in parole decisions, including
notice of determination, statement by the government, and
opportunity for prisoner to submit written response).

Here, as noted by the Appellate Division, the Parole Board
appropriately considered all relevant evidence, including such
mitigating factors as Petitioner's participation in programs
specific to his behavior, average to above average institutional
reports, and achievement of minimum custody status, and recent
improvement in his record of institutional infractions.  The
Parole Board and the Appellate Division also noted Petitioner's
extensive history of infractions and his continuing lack of
insight into his offense behavior.

Specifically, the Parole Board explained that Petitioner has
only begun the process of guilt acceptance.  The Appellate
Division noted that such factors, "coupled with the violent
nature of [Petitioner's] crimes and the fact that [Petitioner],
while previously on parole, committed the offense for which he is
currently incarcerated,' indicated that the Parole Board had
appropriately considered the relevant factors in Petitioner's
record.  (Opinion of Appellate Division at 9, Resp. Ex. A.)

Neither the regulation permitting imposition of an extended
FET, nor the Parole Board's decision in this case, demonstrate
the level of arbitrariness that would meet the substantive due

22

process standard of "conscience-shocking" behavior.  Certainly the record establishes "some basis" for the decision.

In addition, the procedural steps for prior notification, opportunity to be heard through a written submission, and written notice of the reasons for the decision to impose an extended FET meet the demands of procedural due process.  Petitioner does not allege that his decision was made in the absence of these procedural steps.

As the reasoning set forth supports, Petitioner is not entitled to relief on his due process claims.  See Perry v. McCargo, Civil Action No. 03-0551, 2005 WL 2789386 (D.N.J. 2005) (similarly rejecting due process challenges to (a) New Jersey parole regulation permitting imposition of extended FET and (b) parole decision imposing extended FET).  The decision of the Appellate Division was neither contrary to, nor an unreasonable application of, governing federal law.  Also, the Appellate Division decision was not based on an unreasonable determination of the facts in light of the evidence presented.

   3.   The Sufficiency of the Evidence Claim

Petitioner argues that the decision of the Parole Board is not supported by the evidence.  Specifically, Petitioner argues that there is not sufficient evidence to sustain the finding that there is a substantial likelihood that he will commit a crime if released on parole.  The Appellate Division specifically found

that "the findings of the Board are supported by sufficient credible evidence in the record." (Opinion of Appellate Division at 9, Resp. Ex. A.)

The argument that there is not sufficient evidence to sustain a parole decision is another way of stating a claim that the decision violates a prisoner's substantive due process rights.  As noted above, "federal courts are not authorized by the due process clause to second-guess parole boards and the requirements of substantive due process are met if there is some basis for the challenged decision."  <u>Coady v. Vaughn</u>, 251 F.3d 480, 487 (3d Cir. 2001).

As noted above, the Parole Board and the Appellate Division reviewed Petitioner's entire record, including mitigating factors, his lack of insight into his criminal behavior, his failure to accept guilt for his behavior, and the fact that he committed the current offense while on parole.  The Appellate Division held that "the findings of the Board are supported by sufficient credible evidence in the record."

This Court agrees that the evidence that Petitioner will commit a crime if released on parole is sufficient to meet the federal substantive due process standard.  Petitioner is not entitled to relief on this claim.

IV.   CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  Miller-El v. Cockrell, 537 U.S. 322, 327 (2003).

Petitioner has failed to make a substantial showing of the denial of a constitutional right.  Accordingly, no certificate of appealability shall issue.

V.   CONCLUSION

For the reasons set forth above, the Petition must be denied.  An appropriate order follows.


                              S/Joseph A. Greenaway, Jr.
                              JOSEPH A. GREENAWAY, JR., U.S.D.J.

Dated:  October 28, 2008

25